IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GILBERT RODRIGUEZ and REFUGIO CAMPOS, on Behalf of Themselves and All Others Similarly Situated, <br><br>*Plaintiffs*, <br><br>v. <br><br>REPUBLIC SERVICES, INC., and BFI WASTE SERVICES OF TEXAS, LP D/B/A REPUBLIC SERVICES OF SAN ANTONIO D/B/A ALLIED WASTE SERVICES OF SAN ANTONIO <br><br>*Defendant*. | Civil Action No. 5:13-cv-00020-XR |

## ORDER

On this day the Court considered Defendants' motion for summary judgment (Doc. No. 18) and Plaintiffs' counter-motion for summary judgment (Doc. No. 20). For the following reasons, the Court denies Defendants' motion and takes Plaintiffs' counter-motion for summary judgment under advisement.

### I. Background

**A. Factual Background[1]**

Defendant BFI Waste Services of Texas, LP d/b/a Allied Waste Services of San Antonio ("BFI") operates a residential collection, recycling and waste disposal business in and around San Antonio, Texas. Gilbert Rodriguez ("Plaintiff Rodriguez") and Refugio Campos ("Plaintiff

---

[1] The following factual background summary reflects the facts set out in "BFI Waste Services of Texas, LP's Factual Statement and Appendix in Support of its Motion for Summary Judgment," and is not in dispute.

1

Campos") were employed by BFI as Residential Route Drivers and thus were primarily responsible for driving through various residential garbage routes collecting and disposing of residential waste. Plaintiff Rodriguez worked for BFI from August of 2012 until February of 2013, while Plaintiff Campos worked for BFI from September of 2012 until November of 2012.

During the relevant time period, BFI paid Plaintiff Rodriguez and Plaintiff Campos (collectively "Plaintiffs") under a "hybrid compensation plan" that included payments based on both a daily and hourly rate. For the five regularly scheduled work days of the week, Plaintiffs were paid a base day rate of $120. Plaintiffs were also required on occasion to work a day during the weekend (the "Sixth Day") at the discretion of their supervisor. On the Sixth Day, despite Plaintiffs performing the same work as on the regularly scheduled days, Plaintiffs were paid at an hourly rate based upon each employee's regular rate of pay for a trailing thirteen-week average. In addition, it appears that Plaintiffs were provided "incentive payments" of $10 for each day worked, including both the regularly scheduled days and the Sixth Day.[2]

If Plaintiffs worked for more than forty hours in a workweek, BFI paid them overtime. The way in which BFI calculated this overtime is exemplified by the pay stub of Plaintiff Rodriguez for the week ending on September 1, 2012.[3] During this week, Plaintiff Rodriguez worked for a total of 51.23 hours at a day rate of $120 over the five regularly scheduled work days. In addition, Plaintiff Rodriguez worked for 6.12 hours on the Sixth Day at an hourly rate of $15. Thus, when taking into account the $60 incentive payment, Plaintiff Rodriguez's compensation for 57.35 hours was $751.80.

To calculate Plaintiff Rodriguez's overtime compensation, BFI first determined the "regular rate of pay" by dividing Plaintiff Rodriguez's total non-overtime compensation for the

---

[2] *See* Def.s' MSJ, Ex. D. The pay stub of Plaintiff Rodriguez for the week ending on September 1, 2012 reflects a total "incentive payment" of $60 for the six days worked.
[3] *See id.*

2

week by his total number of hours worked. Specifically, BFI divided Plaintiff Rodriguez's total non-overtime compensation of $751.80 by his 57.35 hours worked. Accordingly, the resulting "regular rate of pay" obtained by BFI for the week ending on September 1, 2012, was $13.11.

BFI then paid Plaintiff Rodriguez overtime for all hours worked in excess of forty at half their regular rate of pay. For the week ending on September 1, 2012, this meant that BFI paid Plaintiff Rodriguez 17.35 hours of overtime at $6.55 per hour, for a total of $113.72 in overtime pay. BFI then added this overtime amount to Plaintiff Rodriguez's "straight-time" compensation, found by applying the regular rate of $13.11 to all 57.35 hours, to arrive at Plaintiff Rodriguez's total compensation of $865.52 for the week.

**B. Procedural Background**

Plaintiffs filed their original complaint against Defendant Republic Services, Inc. ("RSI"), on January 8, 2013. On January 30, 2013, Plaintiffs filed an amended complaint naming BFI as a Defendant, and seeking damages from BFI and RSI (collectively "Defendants") on the grounds that BFI's method of compensation violated the Fair Labor Standards Act ("FLSA") and resulted in underpayment of overtime. Thereafter, on March 15, 2013, Defendants filed their answer to Plaintiffs' amended complaint.

On May 13, 2013, Defendants filed their instant motion for summary judgment on the grounds that the compensation scheme employed by BFI is permissible under the FLSA. Subsequently, on June 3, 2013, Plaintiffs filed their instant response and counter-motion for summary judgment. Defendants then filed a reply in support of their motion for summary judgment and response in opposition to Plaintiffs' counter-motion for summary judgment.

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 959 (5th Cir. 2012) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

In this case, the parties agree that there are no material facts in dispute. Rather, each party argues that, based on the undisputed facts, it is entitled to summary judgment as a matter of law.

## III. Discussion

### A. FLSA Overtime

The FLSA provides that "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). In determining the employee's "regular rate of pay," the Fifth Circuit has concluded that the courts are to be guided by the Department of Labor's ("DOL") regulations. *Singer v. City of Waco*, 324 F.3d 813, 823-24 (5th Cir. 2003).

The regular rate of pay under the FLSA is a rate per hour. 29 C.F.R. § 778.109. This rate has been described as the "hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *York v. City of Wichita Falls, Tex.*, 48 F.3d 919, 921 (5th Cir. 1995) (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945)).

In other words, an employee's regular rate of pay is his compensation for the workweek stated on an hourly basis. *See Overnight Transp. Co. v. Missel*, 316 U.S. 572, 580 n.16 (1942) ("[w]age divided by hours equals regular rate"). Thus, the regular rate by its nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. *Walling*, 325 U.S. at 424.

For guidance on computing an employee's regular rate of pay, the DOL regulations provide "some examples" regarding the way in which to calculate this rate under particular compensation schemes. *See* 29 C.F.R. §§ 778.109-778.122. Among these examples are sections 778.112 and 778.115, which concern day rates and "employees working at two or more rates" respectively. *See id.* at §§ 778.112; 778.115. In relevant part, section 778.112 states:

> If the employee is paid a flat sum for a day's work … without regard to the number of hours worked in the day …, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates … in the workweek and dividing by the total hours actually worked.

*Id.* at § 778.112. Likewise, section 778.115 reads:

> Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates.

*Id.* at § 778.115.

In the context of this statutory, regulatory, and precedential framework, the Court now turns to the question of law presented by the parties.

**B. Whether the Work Performed by BFI's Residential Route Drivers on the Sixth Day is Different from That Performed on Regularly Scheduled Workdays**

Although not raised by either party, the Court must briefly discuss whether the work performed by BFI's Residential Route Drivers on the Sixth Day is different than that being

5

performed during the remainder of the workweek. Based upon the undisputed facts, BFI's Residential Route Drivers are responsible for the same duties regardless of the day. Thus, the only difference between the work done on the regularly scheduled workdays and that done on the Sixth Day is in the way that the Residential Route Driver is compensated.

As an initial matter, it would appear to be inconsistent with ordinary meaning to hold that duties performed on one day constitute a separate kind of work from the same duties performed on a different day only because the employee is compensated differently. *See Ferrell v. ConocoPhillips Pipe Line Co.*, No. 5:09-cv-00431-RRP-OP, 2010 WL 1946896, at *7 (C.D. Ca. May 12, 2010). Moreover, it appears that the courts that have considered this issue have required there to be some substantive difference between the content of the jobs before finding that two different kinds of work are at issue. *See, e.g.*, *Townsend v. Mercy Hosp. of Pittsburgh*, 862 F.2d 1009, 1011-12 (3d Cir. 1988) (holding that the normal duties of hospital personnel constituted a different kind of work from waiting time during their on-call shift when the personnel had no duties but to be present); *Mathias v. Addison Fire Prot. Dist. No. 1*, 43 F. Supp. 2d 916, 921-23 (N.D. Ill. 1999) (holding that firefighter and fire inspector duties are different kinds of work because there is minimal overlap between the responsibilities of each). It therefore appears that the performance of the same duties at different times does not constitute different kinds of work. *See Scott v. City of N.Y*, 592 F. Supp. 2d 386, 405 (S.D.N.Y. 2008) (in dictum).

Because it is undisputed that BFI's Residential Route Drivers perform the same duties regardless of which day they are working, the Court concludes that the work performed by such employees on the Sixth Day is the same kind of work that is performed on the regularly scheduled days where the employees are compensated at day rates.

**C. Defendants' Motion for Summary Judgment**

Defendants move for summary judgment on the grounds that the compensation plan employed by BFI is permissible under the FLSA. Accordingly, to prevail on this issue Defendants must initially show that compensating the Residential Route Drivers with day and hourly rates on separate days for completing the same kind of work is permissible. Defendants have presented three arguments in support of their position.

    **1.  Defendants' Reliance on the DOL Opinion Letter of June 22, 1967**

Defendants have provided the Court with a 1967 DOL opinion letter which Defendants argue demonstrates the DOL's approval of a compensation plan "very similar to the one at issue in this case."[4] The scenario addressed in the opinion letter revolved around school bus drivers who were also employed as custodians and who were compensated at a day rate of $10.[5] In addition, these bus drivers were paid $2.00 per hour for taking extra bus trips.[6] The letter goes to outline the method for calculating an employee's regular rate of pay under sections 778.112 and 778.115, before appearing to conclude that the regular rate of pay for these employees could be calculated under section 778.112 by adding the wages earned at both the day and hourly rates and then dividing by the total hours worked in the week.[7] From this, Defendants reason that the DOL has previously approved "essentially the same compensation structure" as the one at issue.[8]

As an initial matter; and despite Defendants assertions to the contrary, the Court finds that the scenario described in the DOL opinion letter is distinguishable from the compensation scheme employed by BFI. Specifically, it is stated in the letter that the employment arrangement

---

[4] Def.s' MSJ at 9.
[5] *Id.*, Ex. E.
[6] *Id.*
[7] *See id.*
[8] *Id.* at 9.

being addressed is one "[w]here employees perform two types of duties."[9] As noted above, however, the employment arrangement between BFI and its Residential Route Drivers involves the performance of identical work on different days for different rates. Accordingly, the Court finds the arrangement described in the 1967 DOL letter to be different from BFI's employment arrangement and compensation scheme in this significant respect. Moreover, the Supreme Court has recognized that opinion letters like the one provided by Defendants are "entitled to respect in proportion to their power to persuade." *Wos v. E. M. A.*, 133 S. Ct. 1391, 1402 (2013). Here, in indicating that the employees could be compensated under the day rate regulation despite receiving an additional hourly rate, the opinion letter appears to completely ignore the language in section 778.112 concerning any "other form of compensation."

### 2. Defendants' Argument Regarding the Context of 29 C.F.R. § 778.112

Defendants also argue that, when viewed in the proper context, the DOL regulation concerning day rates supports BFI's "hybrid" compensation plan.[10] To reach this conclusion, Defendants correctly note that following section 778.109 in the FLSA regulations is a list of "some" different compensation arrangements and the proper method for calculating the employee's regular rate of pay under each. *See* 29 C.F.R. § 778.109. Given this context, Defendants reason that section 778.112 merely sets forth one specific situation in which the DOL chose to illustrate the proper regular rate calculation.[11] In other words, Defendants believe that section 778.112 only demonstrates the proper calculation method for scenarios in which an employee is paid a day rate and "no other form of compensation for services."[12] Defendants therefore conclude that while this regulation exemplifies one way that a regular rate of pay may

---

[9] Def.s' MSJ, Ex. E.
[10] *Id.* at 8.
[11] *Id.*
[12] Def.s' MSJ at 8.

be determined, it does not serve as a categorical rule prohibiting employers from providing additional compensation to employees paid on a day rate basis.[13]

Once again, the Court is not persuaded by Defendants' argument. The Court does not find that the DOL regulations provide support for the possibility of a compensation scheme awarding both day and hourly rates for the completion of the same type of work. The only regulation which explicitly covers employment arrangements involving two different rates being paid to an employee is section 778.115, and this section expressly requires that the employee undertake "different kinds of work." *See* 29 C.F.R. § 778.115 (section titled "Employees working at two or more rates"). Further, section 778.112, upon which Defendants rely, appears to directly contradict the notion that an employee may be compensated on the basis of both a day and hourly rate. Rather, section 778.112 states that it covers employees that are paid a day rate and who also receive "no other form of compensation for services." *Id.* at § 778.112.

### 3. Defendants' Argument Regarding 29 C.F.R. § 778.111

Finally, Defendants argue that BFI's payment scheme is consistent with the compensation arrangement set out in section 778.111 which discusses employees compensated on a piece rate basis. *See* 29 C.F.R. § 778.111. Defendants assert that the piece rate regulation endorses a hybrid compensation plan like BFI's because it provides an example of an arrangement under which an employee is paid on both a piece rate and hourly basis.[14] The example cited by Defendants appears in the regulation as follows:

> [I]f the employee has worked 50 hours and has earned $ 491 at piece rates for 46 hours of productive work and in addition has been compensated at $ 8.00 an hour for 4 hours of waiting time, the total compensation, $ 523.00, must be divided by the total hours of work, 50, to arrive at the regular hourly rate of pay--$ 10.46.

29 C.F.R. § 778.111.

---

[13] *Id.*
[14] Def.s' MSJ at 11.

The Court is not persuaded by Defendants' analogy between BFI's hybrid compensation plan and the arrangement described in the piece rate regulation. Rather, the Court finds that it is more appropriate to compare this example, which involves payment based upon both a flat piece rate as well as an hourly rate to compensate the employee for *waiting time*, to the scenario in which hospital personnel are compensated for being on-site and on-call. This latter scenario was at issue in *Townsend v. Mercy Hospital of Pittsburgh*, a Third Circuit case involving hospital personnel that received one wage for their performance of active duties, and another for working "on-premises-on-call" shifts. 862 F.2d at 1010-11. During these "on-premises-on-call" shifts, the hospital personnel were required to stay on the hospital's premises, but had no assigned duties and were free to eat, sleep, read, and watch television. *Id.* at 1011. Given the substantive difference in duties, the Third Circuit determined that the personnel's active periods constituted a different kind of work from the on-call shift when the only responsibility was to be present. *Id.* at 1011-12.

Viewing the section 778.111 example in light of such authority, the Court finds that the "waiting time" compensation described therein is easily analogous to the "on-premises-on-call" compensation received by the hospital personnel in *Townsend*. Thus, the employee's "waiting time" in the example is best viewed as a different kind of work from the active duties being compensated under a piece rate. As noted above, however, the work being performed by BFI's Residential Route Drivers remains the same throughout the entirety of the workweek, including the occasional Sixth Day. Consequently, rather than endorsing a hybrid compensation arrangement like the one employed by BFI, the example provided in the piece rate regulation and cited by Defendants is distinguishable.

## IV. Conclusion

In light of the foregoing, Defendants' motion for summary judgment (Doc. No. 18) is denied and Plaintiffs' counter-motion for summary judgment (Doc. No. 20) is taken under advisement by the Court.

SIGNED this 12th day of August, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE