IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GILBERT RODRIGUEZ and REFUGIO CAMPOS, on Behalf of Themselves and All Others Similarly Situated, | § § § § | |
| Plaintiffs | § § | |
| v. | § § | NO. 5:13-cv-00020 |
| REPUBLIC SERVICES, INC. and BFI WASTE SERVICES OF TEXAS, LP D/B/A REPUBLIC SERVICES OF SAN ANTONIO D/B/A ALLIED WASTE SERVICES OF SAN ANTONIO, | § § § § § § | |
| Defendant. | § § | |

**DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Esteban Shardonofsky
Texas State Bar No. 24051323
sshardonofsky@seyfarth.com
700 Louisiana Street, Suite 3700
Houston, Texas 77002-2797
Telephone: (713) 225-2300
Facsimile: (713) 225-2340

Noah Finkel (pro hac vice)
nfinkel@seyfarth.com
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603-5803
Telephone: (312) 460-5913
Facsimile: (312) 460-7913

ATTORNEYS FOR DEFENDANTS REPUBLIC SERVICES, INC. AND BFI WASTE SERVICES OF TEXAS, LP

16050048v.2

Defendants BFI Waste Services of Texas, LP d/b/a Allied Waste Services of San Antonio ("BFI") and Republic Services of San Antonio respectfully move the Court to reconsider its ruling on Defendant's Motion for Summary Judgment, and show in support as follows:

**INTRODUCTION**

Plaintiffs Rodriguez and Campos (collectively "Plaintiffs") worked for BFI as residential garbage truck drivers. BFI paid Plaintiffs under a hybrid compensation plan that included payments based on a daily rate and an hourly rate. Defendants sought summary judgment on the validity under the FLSA of this compensation plan and their calculation of the regular rate for overtime purposes. The Court denied Defendants' motion for summary judgment.

Defendants respectfully move for reconsideration of the Court's summary judgment decision because it was based on a clear error of law. The premise of the Court's decision is that, for Defendants' hybrid day-rate/hourly-rate compensation plan to be lawful, the work for which a day rate is paid and the work for which an hourly rate is paid must be different. Otherwise, the Court held, Defendants cannot pay both a day rate and an hourly rate. This premise, which was not raised by the parties, is a clear error of law because there is no bar to paying multiple kinds of rates for the same work.

The Fair Labor Standards Act (FLSA) governs two aspects of employees' compensation. It requires payment of at least minimum wage for all hours worked, 29 U.S.C. § 206, and payment of overtime compensation at a rate of one and one-half an employee's regular rate for all hours worked in excess of 40 in a week, 29 U.S.C. § 207. So long as an employee's pay is above minimum wage, the FLSA says nothing about how an employer must compensate an employee for straight-time hours, and does not regulate when or how an employee can pay different rates of pay to an employee. The Court's contrary ruling was a clear error of law.

First, the Court relied on FLSA Section 7(g)(2) and cases applying that section to establish that employees must perform different kinds of work as a necessary precondition for payments based on different rates. But that section and the cases interpreting it are not applicable here. Section 7(g)(2) applies when non-exempt employees are paid different hourly or piece-rates for performing two or more kinds of work. *See* 29 U.S.C. § 207(g)(2). Here, Plaintiffs were not paid different hourly or piece-rates each workweek and did not perform two or more kinds of work during the workweek. Moreover, the parties never agreed to a compensation structure under Section 7(g)(2) and it is undisputed that BFI did not calculate Plaintiffs' overtime in the manner described by that section. Thus, the Court's reliance on Section 7(g)(2) was a manifest error of law and requires reconsideration. Second, the Court found that Section 778.115 of the FLSA regulations was not applicable in this case because it "requires that the employee undertake 'different kinds of work.'" This conclusion was also erroneous and warrants reconsideration. As various federal district and circuit courts have held, that regulation does not require employees to undertake "different kinds of work" for payment of different rates or as a precondition to calculate the regular rate under the weighted-average method.

Third, the Court rejected BFI's argument that its hybrid compensation plan was consistent with the piece-rate regulation, 29 C.F.R. § 778.111. In doing so, the Court relied exclusively on an example in the second half of the regulation dealing with "waiting time" and different types of work, and ignored the first half of the regulation that talks about piece-rate payments in conjunction payments for "other hours worked." The Court's misinterpretation of Section 778.111 also constitutes a manifest error of law and warrants reconsideration. Fourth the Court's decision warrants reconsideration because it is inconsistent with how courts calculate
3

damages in FLSA cases involving different rates of pay. Those cases that have addressed this issue have calculated back overtime pay owed the exact the same way that BFI paid the Plaintiffs under its hybrid compensation plan.

**ARGUMENT AND AUTHORITIES**

A.  **The Standard For A Request For Reconsideration.**

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004); *see also St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). Reconsideration motions are generally analyzed under the standards for a motion to alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *See Bass v. U.S. Dept. of Agriculture*, 211 F.3d 959, 962 (5th Cir. 2000); *Freeman v. County of Bexar*, 142 F.3d 848, 852 & n.7 (5th Cir. 1998). Rule 59(e) governs when, as in this case, the reconsideration motion is filed within 28 days of the challenged order or when the motion seeks reconsideration of an interlocutory order. *See Herrington v. University of Texas M.D. Anderson Cancer Center*, No. H-09-0601, 2011 WL 177133, *1 (S.D. Tex. Jan. 19, 2011); *Steadfast Ins. Co. v. SMX 98, Inc.*, No. H-06-2736, 2009 WL 3190452, *1-2 (S.D. Tex. Sept. 28, 2009) (drawing the line at 10 days instead of 28 days because the case was decided before the amendments to Rule 59 took effect on December 1, 2009).

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004) (citing *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

4

**B.    The Court's Summary Judgment Decision Was Based On A Manifest Error of Law.**

**1.    The FLSA Does Not Regulate When Or How An Employer May Pay An Employee At Two Different Pay Rates.**

As discussed in the introduction, as long as an employer is paying its non-exempt employees above the minimum wage, the FLSA does not govern how or what additional non-overtime payments those employees can receive. For example, when paying for non-overtime hours, an employer can choose to pay its employees 20 hours at a day rate and 20 hours at an hourly rate. It can pay an employee $20 per hour for work on certain days and $10 per hour for work on others. As long as the employer pays the minimum wage, there are no statutory or regulatory provisions of the FLSA that prohibit employers from paying at two or more rates for non-overtime hours—even if they perform the same work for different rates. Because this case deals only with overtime hours, the only issue here is the calculation of the regular rate, which is the rate of pay used to calculate overtime payments. *See* 29 C.F.R. §§ 778.107-109. When employees are paid on a day rate and an hourly rate for work on different days during the same workweek, how should the employer calculate regular rate for purposes of determining the additional half-time overtime that is owed? As demonstrated below, BFI calculated the Plaintiffs' regular rate correctly.

When employees are paid at two or more different rates during the workweek, Sections 778.111 and 778.115 of the FLSA regulations explain that the employer must use the weighted-average method to calculate the employees' regular rate. Under this method, the employee's total earnings (except statutory exclusions) for the week from all different rates are added are then divided by the total number of hours worked at all jobs. To calculate the overtime owed, the employer must then multiply one-half of the regular rate by all hours worked in excess of 40 in the workweek. *See* 29 C.F.R. §§ 778.111, 778.112 and 778.115 (using the "half-time"

5

overtime method). Because BFI paid Plaintiffs an additional half-time compensation for all their overtime hours, the Plaintiffs' total overtime compensation equals the statutorily-mandated amount.

> 2. **The Requirement Under FLSA Section 7(g)(2) Of "Two or More Kinds of Work" For Different Rates Does Not Apply In This Case.**

In its summary judgment decision, the Court *sua sponte* raised the issue whether the work performed by Plaintiffs on the sixth day of the workweek (when they were paid an hourly rate) is different than the work they performed during the remainder of the workweek (when they were paid a day rate). *See* MSJ Order at 5-6. In its discussion of this issue, the Court cited four cases where employers paid their non-exempt employees two different rates for performing (or allegedly performing) different kinds of work. Each of those cases address the interpretation and application of FLSA Section 7(g)(2).[1] Although that Section does require the performance of different kinds of work as a precondition for payment based on different rates, Section 7(g)(2) is not applicable here for various reasons.

Under the FLSA, an employer is required to pay non-exempt employees one and one-half times their regular rate of pay for all hours worked over 40 each workweek. *See* 29 U.S.C. § 207(a)(1). The "regular rate" for an employee for a workweek is determined by dividing his total compensation in any workweek by the total number of hours actually worked by him in that workweek. 29 C.F.R. § 778.109. When an employee works at one rate in a week, this is easy. For example, if an employee works at an hourly rate of $20 per hour and receives no other compensation, his regular rate is $20 per hour. But when an employee in a single workweek works at two or more different rates of pay, the regular rate for that week is the weighted average

---

[1] *See* MSJ Order (Docket No. 23) at 5 (citing *Ferrell v. ConocolPhillips Pipe Line Co.*, 2010 WL 1946896, 2010 U.S. Dist. LEXIS 46697, *21-25 (C.D. Cal. May 12, 210), *Townsend v. Mercy Hosp. of Pittsburgh*, 862 F.2d 1009, 1011-12 (3d Cir. 1988), *Mathias v. Addison Fire Prot. Dist. No. 1*, 43 F. Supp. 2d 916, 920-25 (N.D. Ill. 1999), and *Scott v. City of N.Y.*, 592 F. Supp. 2d 386, 405 (S.D.N.Y. 2008)).

6

of such rates. That is, the total earnings are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs. 29 C.F.R. § 778.115.

This becomes problematic for some employers whose employees desire to pick up additional duties. For example, many fire departments employ firefighters who are on duty for 24 hours, and then off duty for 48 hours. Those firefighters often seek to perform additional, lower-paying work for the fire department during their off duty hours, often as fire inspectors. This is where the weighted average becomes a problem. If a firefighter works 48 hours as a firefighter at $40 per hour, and then seeks to work an additional 16 hours as a fire inspector at the fire inspector rate of $20 per hour, the "weighted average" of those two rates for overtime calculation purposes is $35 per hour, and the overtime rate for that employee to perform fire inspection work is $52.50. Not surprisingly, fire departments are anxious about spending taxpayer money on high overtime rates for what is typically lower-paying work. Many fire departments thus refrain from having firefighters perform fire inspection work because they are better off paying a fire inspector at $30 per hour ($20 x 1.5) to perform that work than a firefighter at $52.50. Section 7(g)(2) was enacted to provide a solution to this type of problem.

Under that provision and its corresponding regulation, an employee who performs *two or more different kinds of work*, for which different straight time hourly rates are established, may agree with his employer that he will be paid for overtime hours at a rate not less than one and one-half times the hourly non-overtime rate established for the particular type of work he is performing during the overtime hours. *See* 29 C.F.R. § 778.419; *see also* 29 U.S.C. § 207(g)(2) ("No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of the maximum workweek . . . if, pursuant to an agreement

7

or understanding arrived at between the employer and the employee . . . the amount paid to the employee for [overtime hours] . . . in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during nonovertime hours."). In other words, Section 7(g)(2) allows employers to calculate overtime depending on the particular type of work being performed during the overtime hours and the corresponding agreed-upon non-overtime rate for that particular work, rather than on a weighted average or blended rate. As a precondition, the employees must perform "two or more kinds of work." *See* 29 U.S.C. § 207(g)(2); *see also* 29 C.F.R. § 778.419(a).[2]

The Court relies on the Section 7(g)(2) cases to establish that different kinds of work are a necessary precondition for payments based on different rates. But that section and the cases interpreting it are not applicable here. Section 7(g)(2) applies when non-exempt employees are paid different hourly or piece-rates for performing two or more kinds of work. *See* 29 U.S.C. § 207(g)(2). Here, Plaintiffs were not paid different hourly or piece-rates each workweek and did not perform two or more kinds of work during the workweek. Moreover, the parties never agreed to a compensation structure under Section 7(g)(2) and it is undisputed that BFI did not calculate Plaintiffs' overtime in the manner described by that section. Consequently, Section 7(g)(2) is not applicable.

---

[2] In order to satisfy the requirements of the Section 7(g)(2) exemption, an employer must demonstrate: (1) that the employee performed two or more different kinds of work; (2) the employer established bona fide hourly rates for the different kinds of work; (3) the compensation was paid pursuant to an agreement or understanding between the employee and the employer in advance of the performance of the work; and (4) the overtime rates were computed at a rate not less than one and one-half times the normal applicable rate for the same work when performed during non-overtime hours. *See* 29 C.F.R. §§ 778.417 & 778.419; *see also Mathias*, 43 F. Supp. 2d at 920-921.

8

Because the Court relied on Section 7(g)(2) to demonstrate that Plaintiffs had to perform "two or more kinds of work" to receive payment at different rates, the Court's conclusion was a manifest error of law and requires reconsideration.

### 3. FLSA Regulation 778.115 Is Not A Blanket Rule Requiring Different Kinds Of Work For Different Rates Of Pay.

In denying Defendants' motion for summary judgment, the Court found that Section 778.115 of the FLSA regulations was not applicable in this case because it "requires that the employee undertake 'different kinds of work.'" *See* MSJ Order at 9. Yet this too is an erroneous conclusion because that regulation is not a blanket rule prohibiting the payment of different rates (and the calculation of the regular rate using a weighted-average method) when employees do not perform different kinds of work. Various federal district and circuit courts have previously explained and upheld this interpretation of the FLSA and Section 778.115.

In *Allen v. The Board of Public Education*, former and current bus drivers employed by a school district were paid different hourly rates when they worked different bus routes (while performing the same kind of work). *See Allen*, 495 F.3d 1306, 1310 (11th Cir. 2007). The district court found that this policy of paying different rates for different routes, and paying overtime based upon a blended rate, did not violate the FLSA. *Id.* at 1311. On appeal, the bus drivers argued the defendant could not rely on the blended-rate calculations under Section 778.115 because the language in that regulation talks about an employee who "in a single workweek *works at two or more different types of work* for which different nonovertime rates of pay . . . have been established." *Id.* at 1212-13 (emphasis added). Thus, the plaintiffs argued, they could not be paid under this regulation because they were not paid different rates for different types of work. *Id.* But the Eleventh Circuit rejected this interpretation and affirmed summary judgment in favor of the employer.

9

As *Allen* recognized, section 778.115 (like the day-rate regulation at 778.112)[3] is just an example involving the calculation of the regular rate that the Department of Labor chose to highlight and explain, and is not a blanket rule requiring different types of work for different pay rates:

> Thus, reading section 778.115 in the context of section 778.109, it becomes apparent that the former is one of the examples mentioned in the latter as a way that the regular rate may be calculated in certain cases. While it exemplifies one way that a regular rate may be determined, *it does not mandate that differing rates of pay are only permitted when different types of work are performed*."

*Id*. at 1313 (emphasis added). The Eleventh Circuit then concluded: "[W]e hold that the FLSA does not contain a requirement that employees perform different types of work in order for employers lawfully to pay them different rates." *Id*.

Various courts before and after *Allen* have interpreted the FLSA and section 778.115 similarly. The Second Circuit in *Gorman v. The Consolidated Edison Corp.*, for example, approved the weighted-average method under Section 778.115 to calculate the regular rate in that case, even though the plaintiffs were paid different hourly rates for working different shifts during the workweek. *Gorman*, 488 F.3d 586, 595-97 (2d Cir. 2007). In reaching this conclusion, the Second Circuit rejected the contention that Section 778.115 requires different types of work in order for employers to pay different rates:

> As plaintiffs observe, the example used in this regulation assumes that the two rates of pay are a result of different jobs, not nighttime differentials. But this observation *misapprehends the purpose of the regulation*, which is simply to provide an example of a means of calculating the regular rate. See 29 C.F.R. § 778.109 ("The following sections give some *examples* of the proper method of determining the regular rate of pay in particular instances . . . ." (emphasis added)).

---

[3] As Defendants noted in the summary-judgment briefing, Section 778.112 is just one example where the DOL chose to highlight and explain (*i.e.*, answer) the calculation of the regular rate under one specific scenario. It is not a blanket rule that prohibits employers from providing additional or different compensation to employees paid on a date-rate basis, as long as the employer follows the rules for calculating the regular rate in that Section and under Section 778.109.

10

*See Gorman*, 488 F.3d at n.11 (emphasis added); *see also Parth v. Pomona Valley Hosp. Med. Ctr.*, 584 F.3d 794, 802-803 (9th Cir. 2009) (upholding the calculation of the regular rate under weighted-average method described in Section 778.115, even though the plaintiffs were paid different hourly rates for different shifts and did not perform different kinds of work);[4] *Gonzalez v. Bustleton Servs., Inc.*, Civ. A. No. 08-4703, 2010 U.S. Dist. LEXIS 23158, *10 (E.D. Pa. Mar. 5, 2010) ("In this case, it could be argued that Plaintiffs were not performing 'different kinds of work' because they were still performing landscaping duties when performing work on 'prevailing wage' jobs. However, the courts applying [778.115] to calculate an overtime rate have rejected such a distinction.").

As the foregoing illustrates, apart from Section 7(g)(2), neither Section 778.115 or the FLSA itself require employees to undertake "different kinds of work" for payment of different rates or as a precondition for the calculation of the regular rate under the weighted-average method. The Court's ruling to the contrary is based (in the words of the Second Circuit in *Parth*) on a misapprehension of that regulation, constitutes manifest error or law, and warrants reconsideration.

### 4. The DOL's Piece-Rate Guidance Supports BFI's Hybrid Compensation Plan.

The Court also rejected BFI's argument that its hybrid compensation plan was consistent with the DOL's interpretive guidance on piece-rates. 29 C.F.R. § 778.111. The Court noted that the example cited in the second half of Section 778.111(a) was not analogous to BFI's hybrid compensation plan because it includes payments based on piece rates and "waiting time." *See*

---

[4] The Ninth Circuit in *Parth* also rejected the plaintiff's contention that she could not be paid different rates for performing the same work in different shifts: "Parth also argues that [Defendant's] pay plan is unlawful, because nurses working both the 8-hour and 12-hour shifts perform the same work, but are paid at different rates. We find no authority that suggests employees cannot be paid different rates for different shifts, and Parth fails to present any authority to the contrary. We do, however, find ample authority from other circuits that supports [Defendant's] argument that workers working different shifts may be paid different rates." *Parth*, 584 F.3d at 802-803.

MSJ Order at 9-10. According to the Court, this "waiting time" is analogous to the "on-premises-on-call" time in the *Townsend* case and "is best viewed as a different kind of work from the active duties being compensated under a piece rate." *Id*. at 10. While this may be a proper comparison, it does not lead to the conclusion that the piece-rate regulation does not support BFI's hybrid compensation plan.

As noted in the preceding sections, the FLSA does not require employees to perform different types of work as a precondition for payments based on different rates. Consequently, the Court's analogy between the example in Section 778.111 and the *Townsend* case (which involves the application of Section 7(g)(2)) is immaterial in this context. Moreover, just like the other examples that follow Section 778.109, the example in the piece-rate regulation is just that: the DOL's attempt to highlight and explain the calculation of the regular rate in a very specific and particular context. But it does not constitute a blanket rule. *See* 29 C.F.R. § 778.109 778 ("The following sections give some *examples* of the proper method of determining the regular rate of pay in particular instances . . . .") (emphasis added); *see also Allen*, 495 F.3d at 1313 ("[R]eading section 778.115 in the context of section 778.109, it becomes apparent that the former is one of the examples mentioned in the latter as a way that the regular rate may be calculated in certain cases."). More importantly, however, although BFI also cited to the first half of 778.111(a) in support of its arguments, the Court did not address that language—even though it sanctions the weighted- average method based on piece rates and other compensation paid for "waiting time or other hours worked."[5] The fact that the DOL chose to highlight in the

---

[5] As the regulation explains:

> When an employee is employed on a piece-rate basis, the regular hourly rate of pay is computed by adding together total earnings for the workweek from piece rates *and all other sources (such as production bonuses) and any sums paid for waiting time or other hours worked* (except statutory exclusions). This sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the pieceworker's 'regular rate' for that week. For overtime work

12

rest of the regulation a math problem with waiting-time pay as opposed to payments for "other hours worked" does not support the conclusion that the regulation invalidates BFI's hybrid compensation plan.

To the contrary, under Section 778.111, when an employee is paid on a piece-rate basis and also receives compensation based on an hourly rate, all of the compensation (including any additional payments for "waiting time or other hours worked" that are not expressly excluded by statute) are added and then divided by the number of hours worked to arrive at the regular rate of pay. *See* 29 C.F.R. § 778.111(a). Then, overtime must be paid half-time for all overtime hours. *Id*. This is exactly what BFI does—except that it paid Plaintiffs on a day-rate basis instead of a piece-rate basis in addition to an hourly rate on the sixth day. The Court's misinterpretation of Section 778.111 constitutes a manifest error of law and warrants reconsideration.

### 5. The Court's Decision Is Inconsistent With The Proper Overtime Damages Calculations.

The Court's summary judgment decision is inconsistent with how courts calculate damages in FLSA cases involving different rates of pay. Those courts calculate back overtime pay owed the exact the same way that BFI paid the Plaintiffs under its hybrid compensation plan. For instance, in *Chao v. Casting, Acting, and Security Talent, Inc.*, the DOL sued a movie production company on behalf of various security guards who were not paid overtime properly. *Chao*, C.A. No. 00-03481-RSWL, 2001 U.S. Dist. Lexis 23304, *1-3, 10-11 (C.D. Cal. Nov. 27, 2001). The employees worked as security guards on various movie sets and locations. They were paid different hourly rates for different projects each week—even though they performed the same security work on each project. *Id*. at *9-11. They were paid straight-time for overtime

---

the pieceworker is entitled to be paid, a sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week.

*See* 29 C.F.R. § 778.111 (emphasis added).

hours instead of one and one-half times their regular rate of pay. *Id*. at *10-11. To calculate the regular rate, the *Chao* court (presumably with the support and approval of the DOL) used the weighted average method under 778.115—even though the employees did not perform different kinds of work. *Id*. at *23-24. Because the plaintiffs had already been paid their straight-time for all overtime hours, they were only entitled to an additional one-half of their regular rate for all overtime hours. *Id*. at *24.

This is the same calculation other courts have used to determine overtime damages where different rates are paid in the same workweek. *See, e.g.*, *Gonzalez*, 2010 U.S. Dist. LEXIS 23158 at *10-14 (using the weighted-average method under Section 778.115 to calculate landscape laborers' overtime damages, even though they were paid different rates for doing the same work). And it is the same way that BFI calculated and paid the Plaintiffs' overtime each week. The Court's summary judgment decision therefore warrant reconsideration because it is inconsistent with how courts calculate damages in FLSA cases involving different rates of pay.

## CONCLUSION

For the reasons set forth above, Defendants BFI Waste Services of Texas, LP d/b/a Allied Waste Services of San Antonio and Republic Services of San Antonio respectfully asks the Court to reconsider its ruling on Defendants' Motion for Summary Judgment and to grant summary in their favor and rule that BFI's method of paying Plaintiffs was lawful and did not violate the FLSA.

DATED: August 28, 2013　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　SEYFARTH SHAW LLP

　　　　　　　　　　　　　　　　　　　　BY: /S/ ESTEBAN SHARDONOFSKY
　　　　　　　　　　　　　　　　　　　　　　　Esteban Shardonofsky
　　　　　　　　　　　　　　　　　　　　　　　Texas State Bar No. 24051323
　　　　　　　　　　　　　　　　　　　　　　　sshardonofsky@seyfarth.com
　　　　　　　　　　　　　　　　　　　　　　　700 Louisiana Street, Suite 3700
　　　　　　　　　　　　　　　　　　　　　　　Houston, Texas 77002-2797
　　　　　　　　　　　　　　　　　　　　　　　Telephone: (713) 225-2300
　　　　　　　　　　　　　　　　　　　　　　　Facsimile: (713) 225-2340

　　　　　　　　　　　　　　　　　　　　　　　Noah Finkel (pro hac vice)
　　　　　　　　　　　　　　　　　　　　　　　nfinkel@seyfarth.com
　　　　　　　　　　　　　　　　　　　　　　　131 South Dearborn Street, Suite 2400
　　　　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60603-5803
　　　　　　　　　　　　　　　　　　　　　　　Telephone: (312) 460-5913
　　　　　　　　　　　　　　　　　　　　　　　Facsimile: (312) 460-7913

　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Defendants REPUBLIC SERVICES, INC. AND BFI WASTE SERVICES OF TEXAS, LP

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2013, a true and correct copy of the foregoing instrument was served upon counsel of record for Plaintiff, as listed below, by the Western District of Texas ECF.

　　　Charles M. R. Vethan
　　　The Vethan Law Firm, PC
　　　3501 Allen Parkway
　　　Houston, Texas 77019


　　　　　　　　　　　　　　　　　　　　/s/ Esteban Shardonofsky
　　　　　　　　　　　　　　　　　　　　Esteban Shardonofsky

15

16050048v.2