IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GILBERT RODRIGUEZ and REFUGIO CAMPOS, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs<br><br>v.<br><br>REPUBLIC SERVICES, INC. and BFI WASTE SERVICES OF TEXAS, LP D/B/A REPUBLIC SERVICES OF SAN ANTONIO D/B/A ALLIED WASTE SERVICES OF SAN ANTONIO,<br><br>Defendant. | § § § § § § § § § § § § § § § § § NO. 5:13-cv-00020 |

## DECLARATION OF CINDY DUGGAN

I, Cindy Duggan, declare as follows:

1. I have personal knowledge of the facts in this declaration from information contained in relevant corporate records, made and maintained under my supervision, as part of my normal business duties and in the ordinary course of business.

2. I am currently employed by BFI Waste Services of Texas, LP d/b/a Allied Waste Services of San Antonio ("BFI") as a Payroll Processor. I have held this position since approximately October 2009.

3. BFI operates a residential collection, recycling and waste disposal business in and around the San Antonio, Texas area. Plaintiffs Gilbert Rodriguez and Refugio Campos worked for BFI as residential garbage truck drivers. In that position, they were responsible for driving through various residential garbage routes collecting and disposing of residential waste.

4. Plaintiff Gilbert Rodriguez worked for BFI from August 2012 until February 2013. Plaintiff Refugio Campos worked for BFI from September 2012 until November 2012.

15468048v.1

EXHIBIT A

5.  BFI paid Rodriguez and Campos (collectively the "Plaintiffs") under a hybrid compensation plan that includes payments based on a daily rate and an hourly rate. Rodriguez and Campos received employment offer letters that outlined their compensation, and they are required to acknowledge and sign those letters as a condition of employment. They each received and signed their offer of employment letters. Attached as Exhibit B to BFI's Factual Statement and Appendix In Support Of Its Motion For Summary Judgment is a true and correct copy of Refugio Campos' Offer of Employment Letter. Attached as Exhibit C to BFI's Factual Statement and Appendix In Support Of Its Motion For Summary Judgment is a true and correct copy of Refugio Campos' Offer of Employment Letter.

6.  Plaintiffs generally worked five days per week. For those regularly-scheduled work days, they were paid a day rate. Although Plaintiffs' day rate did not fluctuate from week to week, they could have different day rates depending on each driver's experience, DOT certifications, and years of service with BFI. On occasion, Plaintiffs were required to work an additional sixth day. For any work on the sixth day, BFI paid them an hourly rate based on each employee's regular rate for a trailing 13-week average. The regular hourly rate paid to Plaintiffs on the sixth day of work is always at least the required federal minimum wage.

7.  If Plaintiffs worked more than 40 hours in a workweek, BFI paid them overtime. The way BFI calculated this overtime is outlined in each employee's weekly pay stubs. Attached as Exhibit D to BFI's Factual Statement and Appendix In Support Of Its Motion For Summary Judgment is a true and correct copy of Gilbert Rodriguez's pay stub for the week ending September 1, 2012. During the week ending September 1, 2012, Rodriguez's pay stub shows that he worked his five regularly-scheduled work days, Monday through Friday. On those days, Rodriguez's pay stub shows that BFI paid him a daily rate of $120 per day. On the sixth day,

15468048v.1

EXHIBIT A

Rodriguez worked 6.12 hours and BFI paid him an hourly rate of $15.00 hour for that time—totaling $91.80 (6.12 x $15.00/hr.). For the entire week, Rodriguez's pay stub shows that he worked a total of 57.35 hours.

8. BFI also paid him overtime on all hours worked over 40 based on each employee's regular rate of pay. To calculate Rodriguez's and Campos' overtime pay, BFI first determined their regular rate of pay by dividing each employee's total compensation for the week (including his day rate, weekly incentive compensation, and hourly rate on the sixth day) by the employee's total hours worked. In Rodriguez's pay stub, that calculation is outlined in the following equation:

$$\frac{\text{Base \$\$}}{\text{Total Hrs.}} = \frac{751.80}{57.35} = 13.11$$

As shown in Rodriguez's pay stub, Rodriguez's regular rate of pay for the week ending September 1, 2012 was $13.11.

9. BFI then paid Plaintiffs overtime for all hours worked over 40 at half their regular rate of pay. For example, during the week ending September 1, 2012, Rodriguez's pay stub shows that BFI paid him 17.35 hours overtime at $6.55 per hour, for a total of $113.72 in overtime pay:

$$\begin{aligned} \text{O.T RATE} &= 6.55 \\ \text{O.T HRS X} &= 17.35 \\ \text{O.T. PAY} &= 113.72 \end{aligned}$$

BFI then added this overtime to Plaintiffs' base pay to arrive at the employee's total compensation for the week.

10. Rodriguez's pay stub (Exhibit D to BFI's Factual Statement and Appendix In Support Of Its Motion For Summary Judgment) illustrates how BFI calculated Rodriguez's and Campos' pay each week of their employment with BFI.

3

15468048v.1

EXHIBIT A

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 13th, 2013, at San Antonio, Texas.

*[signature]*
Cindy Duggan

EXHIBIT A